RAY WALKER AND BETTY STATEN, PLAINTIFFS v. FLEETWOOD HOMES OF NORTH CAROLINA, INC., A NORTH CAROLINA CORPORATION, DEFENDANT

No. COA04-1466

(Filed 21 March 2006)

**1. Unfair Trade Practices— manufactured housing—failure to perform repairs and other work—failure to respond to complaints**

The trial court properly decided that defendant's violations of the regulations of the N.C. Manufactured Housing Board were sufficient to support a claim under N.C.G.S. § 75-1.1. The jury found that defendant failed to perform repairs, alterations, and/or additions completely and in a workmanlike manner, and repeatedly failed to respond promptly to consumer complaints and inquiries.

**2. Unfair Trade Practices— purchase of mobile home by parent for child—claim by child**

The trial court did not err by ruling that plaintiff Staten may maintain a claim for recovery pursuant to N.C.G.S. § 75-16 arising from her father's purchase of a mobile home for her. The conclusion that "any person" in the statute does not include Staten would leave her with no remedy, as she would not be able to recover as a buyer under Chapter 75 or under the bond required by N.C.G.S. § 143-143.12(c).

**3. Damages and Remedies— unfair trade practices—loss of privacy—emotional distress—not pled**

A new trial was awarded on damages in an action for unfair and deceptive trade practices arising from a parent's purchase of a mobile home for his daughter where the court allowed the jury to consider loss of privacy and mental and emotional distress even though neither the claims nor the supporting facts were pled, there was no attempt to amend the complaint to include these claims, and defendant objected to the trial court's jury instruction on emotional distress.

**4. Appeal and Error— preservation of issues—issue not brought forward in motion appealed**

The issue of whether damages should have been reduced by the amount of a settlement was not preserved for appeal where it was not brought forward in defendant's motion for judgment

notwithstanding the verdict or a new trial, the only motion from which defendant appealed.

Judge JACKSON concurring in part and dissenting in part.

Appeal by defendant from order entered 15 March 2004 by Judge Charles H. Henry in the Superior Court in Craven County. Heard in the Court of Appeals 16 June 2005.

*William F. Ward, III, for plaintiffs.*

*Womble, Carlyle, Sandridge & Rice, P.L.L.C., by Philip J. Mohr and Alison R. Bost, for defendant.*

HUDSON, Judge.

Plaintiffs Ray Walker and Betty Staten brought suit against defendant Fleetwood Homes, Inc., ("Fleetwood") and other defendants asserting various claims arising out of Walker's purchase of a mobile home for his daughter Staten. After plaintiffs settled with the other defendants, they proceeded to trial against Fleetwood on 7 July 2003. On 8 September 2003, Judge W. Allen Cobb granted plaintiff's motion for a mistrial. The case came on for retrial on 29 September 2003 on Walker's claims for breach of contract, breach of express warranty and unfair and deceptive trade practices ("UDTP"), and Staten's claims for breach of contract and UDTP. Both of plaintiffs' breach of contract claims were dismissed, but the jury returned a verdict in favor of Walker on his breach of warranty and UDTP claims, and in favor of Staten on her UDTP claim. The court heard arguments from the parties on whether judgment should be entered on the verdict. On 25 November 2003, the court entered judgment for plaintiffs in accordance with the jury's verdict, trebling the damages awarded for UDTP. By separate order, the court awarded attorney's fees to plaintiffs. Defendant then moved for judgment not withstanding the verdict ("JNOV") and a new trial, which motions the court denied on 12 March 2004. Defendants appeal. As discussed below, we affirm in part, and dismiss in part, and remand for a new trial on damages.

In September 2001, Walker made a down payment on a mobile home from New Way Housing of New Bern, which had to specially order the home from Fleetwood. Walker entered into a retail installment contract with Greenpoint Credit, LLC, in order to finance the rest of the purchase price. Although Walker bought the home for his daughter Staten in a so-called "buy-for" arrangement, Walker's name

alone appeared on all related paperwork. Tony Lund, the general manager of New Way, testified that both he and Greenpoint were aware of the buy-for arrangement and knew that Staten intended to live in the home. Lund defined a buy-for arrangement as "when a person buys a home for someone else, and with that information disclosed to the lender, if there is retail financing." This arrangement is common and well-understood in the mobile home industry, as evidenced by plaintiff's exhibit 15, a "Notice to cosigner/borrower in 'buy/for' transactions" from Greenpoint Credit and signed by Walker. The home came with a two-year warranty, which stated:

> Your new home, including the steel structure beneath the floor of the home, plumbing, heating, electrical systems, appliances, and all equipment installed by the Fleetwood Manufacturing Center, is warranted, under normal use, to be free from defects of materials and/or workmanship for two years.

(Emphasis in original). Independent contractors hired by New Way delivered and set up the home on Staten's lot. Plaintiffs found numerous defects in the home, and contacted New Way about them. New Way's general manager inspected the home, then contacted Fleetwood and asked them to make the repairs. On 1 October 2001, Fleetwood sent out a repair crew to inspect the home, but Staten asked them to return the following week to give her time to consult an attorney. No one from Fleetwood ever returned or contacted either plaintiff. On 9 October 2001, Walker attempted to rescind the purchase contract, which New Way refused to accept because it was past the three-day right of rescission provided for in the contract. Plaintiffs then filed this suit.

[1] Defendant first argues that the court erred in denying its motion for directed verdict, for JNOV and for a new trial on plaintiffs' UDTP claims. We disagree.

A motion for JNOV is essentially a renewal of an earlier motion for directed verdict and the standards of review are the same. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337 (1985). In considering such a motion,

> the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradic-

tions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Id.* at 369, 329 S.E.2d at 337-38. "[A] motion for judgment notwith-standing the verdict is cautiously and sparingly granted." *Id.* at 369, 329 S.E.2d at 338.

"[U]nfair or deceptive acts or practices in or affecting commerce" are unlawful. N.C. Gen. Stat. § 75-1.1, *et seq.* (2001). To prevail on such a claim, a plaintiff must show "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting com-merce, (3) which proximately caused actual injury to the plaintiff or to his business." *Mitchell v. Linville*, 148 N.C. App. 71, 73-4, 557 S.E.2d 620, 623 (2001). These requirements have been further defined by this Court:

> If a practice has the capacity or tendency to deceive, it is decep-tive for the purposes of the statute. 'Unfairness' is a broader con-cept than and includes the concept of 'deception.' A practice is unfair when it offends established public policy, as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

*Id.* at 74, 400 S.E.2d at 623 (internal quotation marks and citations omitted). "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1 [; instead]'[s]ubstantial aggravating circumstances' must attend the breach in order to recover under the Act." *Id.* at 75, 400 S.E.2d at 623-24 (internal quotation marks and citations omitted).

Defendant contends that any wrong done to plaintiff was no more than a breach of warranty. However, the jury found that defend-ant engaged in acts which are direct violations of N.C. Gen. Stat. § 143-143.13, which specifies grounds for denying, suspending, or revoking licenses of or imposing civil penalties on members of the manufactured housing industry:

> (a) A license may be denied, suspended or revoked by the Board on any one or more of the following grounds:
>
> ***
>
> (7) Using unfair methods of competition or committing unfair or deceptive acts or practices.

N.C. Gen. Stat. § 143-143.13 (2001). The N.C. Manufactured Housing Board ("the Board") has further specified in the North Carolina Administrative Code that certain specific actions *shall be* considered unfair and deceptive trade practices, including:

> 1. Failure to perform repairs, alterations and/or additions completely or in a workmanlike and competent manner.
>
> ***
>
> 4. Repeated failure to respond promptly to consumer complaints and inquiries.

11 N.C.A.C. 8.0907 (2003). We have held that N.C. Gen. Stat. § 75-1.1 should not be narrowly construed. *Drouillard v. Keister Williams Newspaper Services, Inc.*, 108 N.C. App. 169, 172, 423 S.E.2d 324, 326 (1992), *disc. review denied and cert. denied*, 333 N.C. 344, 427 S.E.2d 617 (1993). "This Court has repeatedly held that the violation of regulatory statutes which govern business activities may also be a violation of N.C. Gen. Stat. § 75-1.1 whether or not such activities are listed specifically in the regulatory act as a violation of N.C. Gen. Stat. § 75-1.1." *Id.*

Here, the jury found that defendant violated the Board's regulations regarding manufactured housing by failing to perform repairs, alterations and/or additions completely and in a workmanlike and competent manner, and repeatedly failing to respond promptly to consumer complaints and inquiries. We conclude that the trial court properly decided that defendant's violations of the Board's regulation regarding UDTP constitute factors sufficient to support a claim under N.C. Gen. Stat. § 75-1.1. Thus, the court did not err in denying defendant's motion for JNOV or a new trial.

[2] Defendants also argue that the court erred in allowing plaintiff Staten to maintain a UDTP claim because she was not a buyer of the home, and that the court erred in its award of damages and attorney's fees to both plaintiffs. We disagree.

Two chapters of the North Carolina General Statutes are at the heart of this case: Article 9A of Chapter 143, North Carolina Manufactured Housing Board—Manufactured Home Warranties, and Chapter 75, Monopolies, Trusts and Consumer Protection, which creates a right of recovery for unfair and deceptive trade practices. Defendant contends that Article 9A of Chapter 143 allows only buyers of homes to recover for UDTP claims, thus barring plaintiff

**WALKER v. FLEETWOOD HOMES OF N.C., INC.**

[176 N.C. App. 668 (2006)]

Staten's claims. Plaintiffs admit that Walker, and not Staten, was the buyer here, but assert that Chapter 143 does not prohibit Staten from recovery, and that Chapter 75 allows her to proceed with her claim.

The purpose of Chapter 143 is stated as follows:

> The General Assembly finds that manufactured homes have become a primary housing resource for many of the citizens of North Carolina. The General Assembly finds further that it is the responsibility of the manufactured home industry to provide homes which are of reasonable quality and safety and to offer warranties to buyers that provide a means of remedying quality and safety defects in manufactured homes. The General Assembly also finds that it is in the public interest to provide a means for enforcing such warranties.

N.C. Gen. Stat. § 143-143.8 (2004). N.C. Gen. Stat. § 143-143.12 is entitled "Bond required" and describes who must have bonds and in what amounts, also stating that

> [a]ny buyer of a manufactured home who suffers any loss or damage by any act of a licensee that constitutes a violation of this Article may institute an action to recover against the licensee and the surety.

N.C. Gen. Stat. § 143-143.12(c) (2004). As set forth in these quoted sections, the General Assembly specifically created a remedy for buyers of such homes.

However, we conclude that defendant's reliance N.C. Gen. Stat. § 143-143.12(c) is misplaced as it addresses only who may bring an action against the required surety bonds. While N.C. Gen. Stat. § 143-143.12 specifically sets forth the recourse a buyer may have, it does not limit the remedies one who is not the buyer may have under other provisions of law, such as Chapter 75. Thus to determine who may pursue a claim for unfair and deceptive trade practices, we believe defendant should look to N.C. Gen. Stat. § 75-16.

Chapter 75 provides, in pertinent part:

> If *any person* shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of

such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

N.C. Gen. Stat. § 75-16 (2004). The statute covers "any person who suffers an injury under Chapter 75, regardless of whether that person purchased directly from the wrongdoer." *Hyde v. Abbott Lab.*, 123 N.C. App. 572, 577, 473 S.E.2d 680,684, *disc. review denied*, 344 N.C. 734, 478 S.E.2d 5 (1996). Thus, we conclude that the court did not err in ruling that plaintiff Staten may maintain a claim for recovery against defendants pursuant to N.C. Gen. Stat. § 17-16. The dissent's conclusion that "any person" does not include Staten would result in her having no remedy at all,. as she would not be able to recover as a buyer under the bond, nor could she recover damages under Chapter 75. Such a result would be inconsistent with the *Hyde* case, and with the broad remedial purpose behind Chapter 75.

**[3]** Defendant next argues that the trial court erred in denying its motion for a new trial for damages pursuant to N.C. Gen. Stat. § 1A-1 Rule 59(a)(7) and (8) (2004), arguing that allowing the jury to consider "loss of privacy" and "mental and emotional distress" as a part of Walker's damages in his UDTP claim constituted error. Even assuming *arguendo* that these are proper bases for damages in an UDTP claim, we hold that because plaintiffs failed to plead these as damages, the trial court erred in submitting these issues to the jury. *Lassiter v. Cecil*, 145 N.C. App. 679, 682, 551 S.E.2d 220, 222, *disc. review denied*, 354 N.C. 363, 556 S.E.2d 302 (2001). Plaintiffs' complaint does not include any claim for damages due to loss of privacy or mental and emotional distress. In fact, plaintiffs' complaint does not mention loss of privacy or emotional and mental distress, and does not allege facts supporting these claims as a basis for damages. *Id.* at 681-82, 551 S.E.2d at 222. Plaintiffs' complaint does not even contain a general request for recovery of damages for pain and suffering. Plaintiffs made no attempt to amend their complaint to include these claims for damages, and defendant objected to the trial court's jury instruction containing the emotional distress charge. Because plaintiffs' complaint did not "give defendants sufficient notice of such [claims] for damages[,]" the trial court erred in instructing the jury on emotional distress and loss of privacy, and further erred in denying defendant's motion for a new trial on damages. *Id.* at 682, 551 S.E.2d at 222. We conclude that a new trial on damages is warranted. At the new trial, the court should carefully instruct the jury so that there is no duplication in damages as to the claims of Walker and Staten.

Because during that trial, the court will revisit the issues of attorney's fees and costs, we need not address these issues here.

**[4]** Defendant next argues that the trial court erred in failing to reduce plaintiffs' damages award by the settlement amount paid by New Way Housing. New Way Housing, the retail seller of the defective mobile home, settled with plaintiffs for $12,500.00. Defendant argues that the damages awarded by the jury should have been reduced by this amount. However, defendant did not bring this issue forward in its motion for JNOV or for a new trial. Because it is only from this motion defendant appeals, this issue has not been properly preserved and the Court has no jurisdiction to hear it. *Boger v. Gatton*, 123 N.C. App. 635, 637, 473 S.E.2d 672, 675, *disc. review denied*, 344 N.C. 733, 478 S.E.2d 3 (1996). This argument is dismissed.

Affirmed in part, dismissed in part, and remanded for new trial on damages.

Judge STEELMAN concurs.

Judge JACKSON concurs in part, dissents in part.

JACKSON, Judge concurring in part, dissenting in part.

For the reasons stated below, I must respectfully dissent from the majority's conclusion that the trial court acted properly in allowing Staten to maintain her claim for unfair and deceptive trade practices. I concur, however, with the majority's conclusion that the trial court acted properly in denying defendant's motions as to the claims of plaintiff Walker. I also concur with the majority's conclusion that the trial court erred in submitting to the jury the issues of Walker's damages based on loss of privacy and mental and emotional distress, and that defendant failed to preserve for appeal the issue of whether the trial court erred in failing to reduce plaintiffs' damages.

Defendant's motion for judgment notwithstanding the verdict specifically stated that one of the grounds for its motion was that "Plaintiff Staten was not a buyer of the mobile home and therefore cannot maintain a cause of action for unfair and deceptive trade practices pursuant to G.S. § 143-143.8, *et seq.* and G.S. § 75-16." The facts of this case are largely undisputed, in that Walker purchased the mobile home for Staten, and that Walker's name appeared on all paperwork involved in the sale and manufacture of the home. In addi-

tion, Walker paid all monies which were exchanged as a result of the contract. At no point during the manufacture of this home was defendant made aware of Staten's existence or that the home was being built for her use.

Article 9A of our General Statutes sets forth provisions pertaining to enforcement of warranties for manufactured homes purchased in North Carolina. N.C. Gen. Stat. § 143-143.8 (2001). As found by the jury, and upheld by the majority, defendant was found to have engaged in acts in violation of North Carolina General Statutes, section 143-143.13. North Carolina General Statutes, section 143-143.12(c) (2001) provides that "[a]ny *buyer* of a manufactured home who suffers any loss or damage by any act of a licensee that constitutes a violation of this Article may institute an action to recover against the licensee and the surety." (Emphasis added). However, a "buyer" is defined as "[a] person who purchases at retail from a dealer or manufacturer a manufactured home for personal use as a residence or other related use." N.C. Gen. Stat. § 143-143.9(2) (2001). In the instant case, plaintiff Staten was not the person who purchased the mobile home or who paid money for the home. Therefore, she can not be considered to be a "buyer" who would be entitled to bring a cause of action based upon violations of North Carolina General Statutes, section 143-143.13, and thus she did not have standing to bring an action based on violations of this statute.

As noted by the majority, a plaintiff may maintain a claim for unfair and deceptive trade practices under North Carolina General Statutes, section 75-1.1, however, I believe plaintiff Staten was without standing under this statute as well. Our courts permit consumers not in privity to the original contract to recover when they are injured as a result of unfair and deceptive trade practices. *Hyde v. Abbott Laboratories*, 123 N.C. App. 572, 584, 473 S.E.2d 680, 688, *disc. review denied*, 344 N.C. 734, 478 S.E.2d 5 (1996) ("allowing indirect *purchasers* to sue for Chapter 75 violations will best advance the legislative intent that such violations be deterred, and that aggrieved consumers have a private cause of action to redress Chapter 75 violations" (emphasis added)). Under North Carolina General Statutes, section 75-16 (2001), "any person" who is injured by the acts of another person, firm or corporation, which were done in violation of Chapter 75, has a right of action to recover for their injury.

Staten argues that the words "any person" should permit her to recover for defendant's unfair and deceptive trade practices. As the

majority has held, and I concur, the trial court properly concluded that defendant committed acts constituting unfair and deceptive trade practices in violation of North Carolina General Statutes, section 75-1.1. However, I would hold Staten is not entitled to the use of the broad classification of "any person" based on our well-settled canons of statutory construction.

Our Supreme Court has held that " 'a statute dealing with a specific situation controls, with respect to that situation, [over] sections which are general in their application.' " *In re Charnock*, 358 N.C. 523, 529, 597 S.E.2d 706, 710 (2004) (quoting *State ex rel. Util. Comm'n v. Lumbee River Elec. Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969)). "In such situation the specially treated situation is regarded as an exception to the general provision." *State ex rel. Util. Comm.*, 275 N.C. at 260, 166 S.E.2d at 670 (citation omitted). "This rule of construction is especially applicable where the specific provision is the later enactment." *Id.* North Carolina General Statutes, section 75-16 was originally enacted in 1913, and was amended in 1969 to include the language "[i]f any person shall be injured." However, North Carolina General Statutes, section 143-143.12 originally was enacted in 1981. When two statutes " 'deal with the same subject matter, they must be construed in *pari materia* and harmonized to give effect to each.' " *State ex rel. Util. Comm.*, 275 N.C. at 260, 166 S.E.2d at 670 (quoting *Gravel Co. v. Taylor*, 269 N.C. 617, 620, 153 S.E.2d 19, 21 (1967)). However, when the statute "dealing with a specific matter is clear and understandable on its face, it requires no construction." *Id.* (citing *Highway Commission v. Hemphill*, 269 N.C. 535, 153 S.E.2d 22 (1967); *Davis v. Granite Corporation*, 259 N.C. 672, 131 S.E.2d 335 (1963); *Long v. Smitherman*, 251 N.C. 682, 111 S.E.2d 834 (1960)).

As previously noted, Chapter 143 of Article 9A of our General Statutes specifically provides remedies for individuals injured as a result of the purchase of a manufactured home in our State. As such, I believe the specificity of North Carolina General Statutes, section 143-143.12, which provides a cause of action for buyers injured by violations of Chapter 143 of Article 9A, should be controlling in the instant case over the general requirements for an unfair and deceptive trade practice claim pursuant to North Carolina General Statutes, section 75-16. As Staten lacks standing to maintain a claim under North Carolina General Statutes, section 143-143.12, then she also cannot be entitled to maintain a claim entitling her to treble damages under North Carolina General Statutes, section 75-16. *See Smith v.*

*King*, 52 N.C. App. 158, 161, 277 S.E.2d 875, 877 (1981) (court held that where plaintiff was unable to satisfy the statutory requirements in order to maintain a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 58-54.4(11), plaintiff therefore was not entitled to treble damages under N.C. Gen. Stat. § 75-16).

The majority argues that this position is inconsistent with this Court's holding in *Hyde*, however I cannot agree that it is. In *Hyde*, the plaintiffs actually were purchasers, in that they each spent monies and purchased infant formula through parties other than the defendant manufacturer. The Court concluded plaintiffs were indirect purchasers based on the fact that they actually purchased the infant formula themselves, and that they were alleged to have been damaged as a result of paying higher prices for the formula than they would have absent the illegal conduct. *Hyde*, 123 N.C. App. at 574, 473 S.E.2d at 681-82. In the instant case, Staten did not purchase the mobile home, nor did she expend any of her own monies to assist in the purchase. Therefore, I do not believe that a finding that Staten was without standing to maintain her claim for unfair and deceptive trade practices would be inconsistent with *Hyde* or the broad remedial purpose behind Chapter 75.

Accordingly, I would hold Staten was without standing to bring her claim for unfair and deceptive acts. Therefore, I must respectfully dissent from the majority's opinion to the extent that it finds the trial court acted properly in denying defendant's motion for judgment notwithstanding the verdict as to Staten's claim for unfair and deceptive trade practices.