RAY WALKER AND BETTY STATEN v. FLEETWOOD HOMES OF
NORTH CAROLINA, INC., A NORTH CAROLINA CORPORATION

No. 223A06

(Filed 7 December 2007)

### 1. Unfair Trade Practices— purchase of mobile home for daughter—standing of daughter

The daughter of the purchaser of a mobile home had standing to bring an unfair and deceptive trade practices claim where the father made the down payment and financed the remaining amount with a "buy for" transaction. As the person who selected the interior details for the home, who planned to live in it, and who was going to make the monthly installment payments, she was the consumer and suffered the resulting injury when the home was defective.

### 2. Unfair Trade Practices— violation of regulations—not automatically an unfair practice

A regulatory violation may offend N.C.G.S. § 75-1.1, but does not automatically result in an unfair or deceptive trade practice. Where a violation of statutes pertaining to the N.C. Manufactured Housing Board would not be an unfair trade practice as a matter of law, neither would violation of a licensing regulation promulgated by the Department of Insurance based upon those statutes.

### 3. Unfair Trade Practices— findings—violation of regulation—insufficient basis for finding unfair practice

An unfair and deceptive trade practices claim arising from a defective mobile home was remanded for additional findings where the trial initially submitted to the jury questions concerning repair of the home drawn from a licensure regulation. Violation of that regulation is not a sufficient basis for conclusions as to whether defendant's actions were deceptive, immoral, unethical, oppressive, unscrupulous, or substantially injurious.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 176 N.C. App. 668, 627 S.E.2d 629 (2006), affirming in part and dismissing in part an appeal from an order entered 15 March 2004 by Judge Charles H. Henry in Superior Court, Craven County, and remanding for a new trial on damages. On

**WALKER v. FLEETWOOD HOMES OF N.C., INC.**

[362 N.C. 63 (2007)]

29 June 2006, the Supreme Court allowed defendant's petition for discretionary review as to additional issues. Heard in the Supreme Court 8 January 2007.

*William F. Ward, III, P.A., by William F. Ward, III, for plaintiff-appellees.*

*Womble Carlyle Sandridge & Rice PLLC, by Clayton M. Custer and Philip J. Mohr, for defendant-appellant.*

EDMUNDS, Justice.

Defendant Fleetwood Homes of North Carolina manufactured and delivered a defective mobile home to plaintiffs Ray Walker and Betty Staten. We affirm the Court of Appeals determination that Staten had standing to bring an unfair and deceptive trade practices claim under N.C.G.S. § 75-1.1 (2005). However, we modify the Court of Appeals opinion to hold that while defendant's violations of a licensure regulation may constitute violations of N.C.G.S. § 75-1.1, those violations are not *per se* unfair or deceptive trade practices. Accordingly, we remand this matter for additional findings of fact as to plaintiffs' claims.

In August 2001, plaintiff Ray Walker purchased a new mobile home from New Way Housing (New Way), a retailer in New Bern, North Carolina. New Way specially ordered the construction and delivery of the home from defendant Fleetwood Homes of North Carolina (Fleetwood). Walker supplied a down payment of $9,620.00 and financed the remaining $36,605.00 with a retail installment contract from a Delaware loan corporation. Although the contract recorded Walker as the borrower for the home, his purchase was a "buy for" transaction on behalf of his adult daughter, plaintiff Betty Staten, who was receiving Social Security disability benefits as a result of panic attacks. In such a "buy for" arrangement, the customer purchases a home on behalf of a beneficiary, who may be responsible for subsequent installment payments. As Walker's beneficiary, Staten planned to live in the home and make the monthly installment payments. When the home was purchased, she selected its interior furnishings and amenities.

Defendant delivered the newly-manufactured mobile home to New Way in September 2001, and New Way installed it soon thereafter. Defendant provided a two-year manufacturer's warranty: "Your new home, including the steel structure beneath the floor of the home, plumbing, heating, electrical systems, appliances, and all

equipment installed by the Fleetwood Manufacturing Center, is warranted, under normal use, to be free from defects in materials and/or workmanship for two years." (Emphasis omitted.) New Way contracted with and relied upon defendant to provide all service and warranty work.

Plaintiffs discovered numerous defects in the construction and installation of the home. Deficiencies included uneven floors, twisted walls, missing front steps, an unsafe fireplace, used kitchen cabinets, gaps in the floor exposing the bathroom plumbing, and partially or fully inoperable windows. Because of these defects, Staten never moved into her new home.

Through New Way, plaintiffs repeatedly requested repairs to the home, and at the beginning of October 2001, one of defendant's employees telephoned Staten. Because she had already arranged to meet with counsel the next Thursday, Staten asked the caller to schedule an appointment to come see the home after that day. It is not apparent from the record whether Staten advised the caller that she was consulting with an attorney, but, at any rate, defendant never called back to reschedule and failed to perform any repairs on the home prior to the filing of plaintiffs' complaint. Plaintiffs attempted to rescind the contract later that month, but New Way refused because the purchase contract allowed for rescission only within three business days after the agreement was signed.

In March 2002, plaintiffs brought claims against New Way, the loan corporation, and defendant Fleetwood. Plaintiffs settled their claims against both New Way and the loan corporation before trial, and in accordance with the settlement, the loan corporation repossessed the home. Plaintiffs proceeded to trial against defendant, and on 6 October 2003, a jury found in favor of plaintiff Walker on his claim for breach of warranty. In addition, on the verdict sheets, the jury found that defendant failed to perform repairs completely and in a workmanlike and competent manner, and also repeatedly failed to respond promptly to plaintiffs' complaints regarding the mobile home. Based on the jury's findings, the trial court determined that defendant committed acts that were defined as unfair and deceptive commercial acts or practices by a regulatory rule of the North Carolina Department of Insurance, 11 NCAC 8.0907 (June 2006). The trial court concluded that as a matter of law, those acts constituted unfair or deceptive trade practices pursuant to N.C.G.S. § 75-1.1. Accordingly, plaintiffs recovered on their claims of unfair and deceptive trade practices (UDTP). The trial court denied defendant's

motions for judgment notwithstanding the verdict and a new trial, and defendant appealed.

On 21 March 2006, a divided Court of Appeals affirmed in part, dismissed in part, and remanded for a new trial on damages. Although the Court of Appeals unanimously affirmed the trial court's denial of defendant's post-verdict motions, the panel split as to whether Staten, as Walker's beneficiary, had standing to bring a UDTP claim. *Walker v. Fleetwood Homes of N.C., Inc.*, 176 N.C. App. 668, 627 S.E.2d 629 (2006). The Court of Appeals majority concluded that Staten had standing, while the dissenting judge argued that Staten did not fall within the term "any person" as used in N.C.G.S. § 75-16. Defendant appealed by right to this Court based on the dissent, and also filed a petition for discretionary review. We allowed review of two issues: first, whether violation of a regulation issued by the North Carolina Department of Insurance, 11 NCAC 8.0907, constitutes a *per se* unfair or deceptive trade practice; and second, whether the jury's findings of fact were sufficient for the trial court to conclude that a UDTP occurred as a matter of law. *Walker v. Fleetwood Homes of N.C., Inc.*, 360 N.C. 545, 635 S.E.2d 61 (2006).

**[1]** Defendant initially contends that Staten lacks standing to maintain a UDTP claim because she was not a "buyer" of the home under Article 9A of Chapter 143 of the North Carolina General Statutes ("North Carolina Manufactured Housing Board—Manufactured Home Warranties").[1] Defendant cites N.C.G.S. § 143-143.12(c) (2005), which provides that "[a]ny buyer of a manufactured home who suffers any loss or damage by any act of a licensee that constitutes a violation of this Article may institute an action to recover against the licensee and the surety." This statutory section, titled "Bond Required," governs surety bonds that a manufacturer, dealer, or set-up contractor must furnish as licensees of the North Carolina Manufactured Housing Board and allows a buyer of a manufactured home who suffers "any loss or damage by any act of a licensee that constitutes a violation of this Article" to bring an action against those surety bonds for recovery. *Id.* A "buyer" is defined under the Article as "[a] person who purchases at retail from a dealer or manufacturer a manufactured home for personal use as a residence or other related

---

1. Article 9A was rewritten by the General Assembly effective 1 April 2006 and 1 July 2006. Act of Aug. 23, 2005, ch. 451, sec. 7, 2005 N.C. Sess. Laws 1796, 1803. Because the instant action was filed before the effective dates of the revision, the previous version of Article 9A applies to this case.

WALKER v. FLEETWOOD HOMES OF N.C., INC.

[362 N.C. 63 (2007)]

use." N.C.G.S. § 143-143.9(2) (2005).[2] Defendant argues that only Walker was the "buyer" of the mobile home and that his "buy for" arrangement on behalf of his daughter Staten did not bring her within the statutory definition. Defendant argues that, as a result, Staten lacks standing to bring a claim.

As the Court of Appeals majority correctly noted, however, N.C.G.S. § 143-143.12 is not an exclusive remedy. *Walker*, 176 N.C. App. at 673, 627 S.E.2d at 633. An injured buyer can bring a suit against the surety bond under that statute, but other injured parties are not precluded from proceeding under other statutes. Chapter 75 of our General Statutes, which prohibits unfair and deceptive trade practices, provides that: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a). Any consumer injured by unfair or deceptive trade practices can bring a UDTP claim:

> If *any person* shall be injured . . . by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person . . . so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

*Id.* § 75-16 (2005) (emphasis added); *see also Marshall v. Miller*, 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981) ("In enacting G.S. 75-16 . . . , our Legislature intended to establish an effective private cause of action for *aggrieved consumers* in this State." (emphasis added)).

The majority cited *Hyde v. Abbott Laboratories, Inc.*, 123 N.C. App. 572, 473 S.E.2d 680, *disc. review denied*, 344 N.C. 734, 478 S.E.2d 5 (1996), an antitrust class action lawsuit, in which the Court of Appeals discussed the term "any person" as used in N.C.G.S. § 75-16. Before that statute was revised in 1969, it began: "If the business of any person, firm or corporation shall be broken up, destroyed or injured . . . ." *Id.* at 576, 473 S.E.2d at 683 (emphasis omitted). After the revision, the statute began with the formulation that remains current: "If any person shall be injured or the business

---

2. Although the definition of "buyer" in this section was amended by the General Assembly effective 1 April 2006, for the reason stated in Footnote 1, the amendment does not affect our analysis.

of any person, firm or corporation shall be broken up, destroyed or injured . . . ." *Id.* at 577, 473 S.E.2d at 683 (emphasis omitted). Comparing the two, the Court of Appeals in *Hyde* concluded that "[a]s it is currently written, N.C.G.S. § 75-16 provides standing to *any person* who suffers any injury, as well as for any business injury." *Id.* at 578, 473 S.E.2d at 684. Accordingly, the *Hyde* plaintiffs, who bought infant formula from parties other than the defendant manufacturer, had standing to sue as "indirect purchasers." *Id.* at 577, 473 S.E.2d at 684.

Although we acknowledge that *Hyde* deals with an antitrust class action lawsuit and thus is not directly applicable to the case at bar, we agree with the analysis conducted by the Court of Appeals majority and its interpretation of "any person" in N.C.G.S. § 75-16. Therefore, as the person who selected the interior details for the home, who planned to live in the home, and who was going to make the monthly installment payments, Staten was a consumer of the mobile home supplied by defendant. When defendant supplied a defective home, Staten suffered a resulting injury. Accordingly, she has standing as a "person . . . injured" under N.C.G.S. § 75-16.

[2] Defendant next contends that its violation of a Department of Insurance regulation, 11 NCAC 8.0907, does not constitute a *per se* unfair or deceptive trade practice. The regulation at issue was promulgated under statutory authority conferred by N.C.G.S. §§ 143-143.10 and 143-143.13 (2005), both of which pertain to the North Carolina Manufactured Housing Board. Section 143-143.10 addresses the creation, composition, powers, and duties of the Manufactured Housing Board. Section 143-143.11(a) (2005) provides that it is unlawful for "any manufactured home manufacturer, dealer, salesperson, or set-up contractor" to conduct business without obtaining a license from the Board, and § 143-143.13 sets out grounds for denying, suspending, or revoking these licenses. In particular, § 143-143.13(a)(7) directs that a license may be denied, suspended, or revoked if a licensee uses "unfair methods of competition or commit[s] unfair or deceptive acts or practices."

Applying this statutory authority, Department of Insurance regulation 11 NCAC 8.0907 delineates unfair methods of competition or unfair or deceptive commercial acts or practices for purposes of licensure penalties. These methods, acts, and practices include but are not limited to:

(1) Failure to perform repairs, alterations and/or additions completely or in a workmanlike and competent manner.

(2) Repeated failure to give timely notice of inability to appear for a scheduled repair.

(3) Representing used manufactured homes, appliances, or fixtures as new or failure to identify used appliances, fixtures and/or equipment in new manufactured homes.

(4) Repeated failure to respond promptly to consumer complaints and inquiries.

11 NCAC 8.0907(1)-(4).

The trial court submitted special interrogatories to the jury concerning plaintiffs' UDTP claims. Several of the interrogatories were based upon subsections (1) and (4) of 11 NCAC 8.0907:

Issue Four: Did the defendant fail to perform repairs completely and in a workmanlike and competent manner?

Issue Five: Was the defendant's failure to perform repairs completely and in a workmanlike and competent manner caused by the conduct of the plaintiffs?

Issue Six: Did the defendant repeatedly fail to respond promptly to the plaintiffs' complaints regarding the manufactured home?

Issue Seven: Was the defendant's repeated failure to respond promptly to the plaintiffs' complaints about the manufactured home caused by the conduct of the plaintiffs?

The jury found for plaintiffs on the interrogatories, and on the bases of these findings, the trial judge entered an order concluding that defendant committed unfair or deceptive trade practices in violation of N.C.G.S. § 75-1.1:

1. The acts so found by the jury in Issues Four and Six to have been done by the defendant Fleetwood are specifically delineated and defined as unfair and deceptive commercial acts or practices in the Regulatory Rules for the North Carolina Manufactured Housing Board as set out in Section 11 N.C.A.C. 8.0907 in the Administrative Code.

2. North Carolina General Statute § 143-143.13(a)(7) sets out using unfair and deceptive acts or practices as defined in 11

**WALKER v. FLEETWOOD HOMES OF N.C., INC.**

[362 N.C. 63 (2007)]

N.C.A.C. 8.0907 as a ground for denying, suspending or revoking the license of a manufacturer of manufactured housing.

3. The Manufacturing Housing Board is the regulatory licensing agency within the N.C. Department of Insurance governing manufacturers of manufactured housing charged with the application of these regulations.

4. The acts so found by the jury in Issues Four and Six occurred in the commerce of and affecting commerce in the State of North Carolina.

5. The acts so found constitute, as a matter of law, unfair or deceptive acts or practices in violation of North Carolina General Statute § 75-1.1.

In affirming the trial court, the Court of Appeals stated " 'that the violation of regulatory statutes which govern business activities may also be a violation of N.C. Gen. Stat. § 75-1.1 whether or not such activities are listed specifically in the regulatory act as a violation of N.C. Gen. Stat. § 75-1.' " *Walker*, 176 N.C. App. at 672, 627 S.E.2d at 632 (quoting *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 172, 423 S.E.2d 324, 326 (1992), *disc. review denied and cert. dismissed*, 333 N.C. 344, 427 S.E.2d 617 (1993)). In *Walker*, the Court of Appeals concluded that "the trial court properly decided that defendant's violations of the Board's regulation regarding UDTP constitute factors sufficient to support a claim under N.C. Gen. Stat. § 75-1.1." *Id.*

Defendant contends the Court of Appeals erroneously concluded that a violation of the North Carolina Administrative Code constitutes a *per se* unfair or deceptive trade practice under N.C.G.S. § 75-1.1. Defendant argues that its violations of subsections (1) and (4) of 11 NCAC 8.0907, regulations which pertain to the licensing of mobile home manufacturers and dealers, do not necessarily establish a Chapter 75 claim. We agree. As the Court of Appeals recognized in *Drouillard*, a violation of a regulatory statute which governs business activities "may also be a violation of N.C. Gen. Stat. § 75-1.1." 108 N.C. App. at 172, 423 S.E.2d at 326. While such a regulatory violation *may* offend N.C.G.S. § 75-1.1, the violation does not automatically result in an unfair or deceptive trade practice under that statute.

Although this Court has previously held that violations of some statutes, such as those concerning the insurance industry, can constitute unfair and deceptive trade practices as a matter of law, *see*,

*e.g., Gray v. N.C. Ins. Underwriting Ass'n,* 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000) (holding that "conduct that violates subsection (f) of N.C.G.S. § 58-63-15(11) constitutes a violation of N.C.G.S. § 75-1.1, as a matter of law"), we decline to hold that a violation of a licensing regulation is a UDTP as a matter of law. In *Gray,* the insurance statute at issue defined in detail unfair methods of setting claims and unfair and deceptive acts or practices in the insurance industry, thereby establishing the General Assembly's intent to equate a violation of that statute with the more general provision of § 75-1.1. In contrast, the regulation at issue here was promulgated by the Department of Insurance pursuant to N.C.G.S. §§ 143-143.10 and 143-143.13. Because a violation of these statutes would not constitute a UDTP as a matter of law, we do not believe that a violation of a licensing regulation based upon those statutes is necessarily a UDTP.

Nevertheless, a regulatory licensure violation may be evidence of a UDTP. Thus, even though defendant's violations of subsections (1) and (4) of 11 NCAC 8.0907 are not unfair or deceptive trade practices *per se,* those violations are potentially relevant to any claim that defendant violated § 75-1.1.

[3] Defendant next contends that the facts found by the jury in its interrogatories were insufficient to demonstrate that defendant committed a UDTP. "Whether an act found by the jury to have occurred is an unfair or deceptive practice which violates N.C.G.S. § 75-1.1 is a question of law for the court." *Ellis v. N. Star Co.,* 326 N.C. 219, 226, 388 S.E.2d 127, 131 (1990) (citing *Hardy v. Toler,* 288 N.C. 303, 308-09, 218 S.E.2d 342, 345-46 (1975)). "Ordinarily, once the jury has determined the facts of a case, the court, based on the jury's findings, then determines, as a matter of law, whether the defendant engaged in unfair or deceptive practices in or affecting commerce." *Gray,* 352 N.C. at 68, 529 S.E.2d at 681.

Here, the jury's answers to interrogatories based upon subsections (1) and (4) of 11 NCAC 8.0907 indicated that defendant failed to perform repairs completely and in a workmanlike and competent manner, and that defendant repeatedly failed to respond promptly to plaintiffs' complaints regarding those repairs. On the basis of these findings of fact by the jury, the trial court determined as a matter of law that defendant committed unfair or deceptive trade practices under § 75-1.1.

However, "[i]n order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2)

in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Id.*; *see also* N.C.G.S. § 75-1.1(a). Only the first element is at issue here. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. "[A] practice is deceptive if it has the capacity or tendency to deceive." *Id.*

The jury determined that Fleetwood breached its express warranty with Walker and awarded Walker $475.00 in damages. Defendant does not appeal the jury's determination. However, defendant contends that the jury's answers to interrogatories four through seven demonstrate nothing more than this breach of warranty. Because a breach of warranty, standing alone, does not constitute a violation of N.C.G.S. § 75-1.1, *see Mitchell v. Linville*, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001) ("Neither an intentional breach of contract nor a breach of warranty, however, constitutes a violation of Chapter 75."), defendant argues that plaintiffs' UDTP claim fails.

In light of our resolution of this case, we need not reach this issue. As to defendant's pertinent behavior, the jury interrogatories asked only whether defendant failed to perform repairs completely and in a workmanlike and competent manner, and whether defendant repeatedly failed to respond promptly to plaintiffs' complaints. These interrogatories were derived nearly verbatim from a licensure regulation, and violations of this regulation by themselves are insufficient to prove a UDTP claim. On these limited findings of fact, the court had an insufficient basis on which to reach conclusions of law required under § 75-1.1 as to whether defendant's actions were deceptive, immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

As explained above, the findings by the jury on those interrogatories can be evidence of unfair or deceptive practices and, in combination with other facts, might be sufficient to prove a UDTP claim. The Court of Appeals unanimously ordered a new trial on damages. At this new trial, the trial court may submit to the jury additional interrogatories seeking information which, if found by the jury, may be sufficient to support a finding of fact that defendant committed a UDTP. Accordingly, we remand this case to the Court of Appeals for further remand to the trial court for additional findings of fact on plaintiffs' claims of unfair and deceptive trade practices.

We affirm the Court of Appeals in part, modify in part, and remand this case to that court for further remand to the trial court for additional proceedings not inconsistent with this opinion.

AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED.

Justice HUDSON did not participate in the consideration or decision of this case.