IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-523

No. COA21-284

Filed 2 August 2022

Alamance County, No. 20-CVS-1030

IZZY AIR, LLC, HUGH TUTTLE, AND LESLIE PAIGE TUTTLE, Plaintiffs,

v.

TRIAD AVIATION, INC., Defendant.

Appeal by Plaintiffs from order entered 22 December 2020 by Judge John M. Dunlow in Alamance County Superior Court. Heard in the Court of Appeals 12 January 2022.

*Crouse Law Offices, PLLC, by James T. Crouse, for Plaintiffs-Appellants.*

*Cranfill Sumner LLP, by Steven A. Bader, Susan L. Hofer, and Mica N. Worthy, for Defendant-Appellee.*

COLLINS, Judge.

Plaintiffs Izzy Air, LLC, Hugh Tuttle, and Leslie Paige Tuttle appeal an order granting Defendant Triad Aviation, Inc.'s, Rule 12(b)(6) motion to dismiss Plaintiffs' complaint. We affirm the trial court's order.

## I. Background

Sometime prior to 30 September 2016, Plaintiffs Hugh Tuttle and his wife Leslie Tuttle, residents of South Carolina and the owners of Izzy Air, LLC, a

Delaware corporation, hired Defendant, an aircraft maintenance and repair service located in Burlington, North Carolina, to overhaul the engine of a small aircraft owned and operated by Plaintiffs. Plaintiffs shipped the engine from South Carolina to Defendant's facility in North Carolina where it was repaired, overhauled, inspected, and tested.

¶ 3        Defendant provided Plaintiffs with a Limited Aircraft Engine Warranty ("Warranty") containing the following language pertinent to this appeal:

> TRIAD AVIATION, INC. warrants the . . . aircraft engine to be free from defects in materials and workmanship furnished by TRIAD for a period of one (1) year or 500 hours from the date of the first operation, or 30 days after delivery as follows.
>
> . . . .
>
> 8. This warranty covers only you, the original purchaser and gives you specific rights which vary from state to state. . . . . The work to which this [l]imited warranty applies is deemed to have been accomplished at Burlington, North Carolina, and *in the event of a dispute on this Warranty the laws of the State of North Carolina shall apply.* To exercise your rights under this Limited Warranty, you must give prompt notice to TRIAD by telephone call or letter fully describing such defect or failure.

(Emphasis added).

¶ 4        The Tuttles took the aircraft with the newly-serviced engine out for a flight in South Carolina on 30 September 2016. Hugh Tuttle piloted the plane and Leslie Tuttle was the sole passenger. Shortly after takeoff, the engine began "running

rough," and "began cutting in and out." Hugh Tuttle declared an emergency and attempted to land at a nearby airport. Before the Tuttles made it to the airport, the engine failed. Hugh Tuttle was forced to make an emergency landing in a field. The plane was damaged beyond repair and the incident caused Plaintiffs "serious personal and psychological injuries."

¶ 5 Plaintiffs notified Defendant of the engine failure and emergency landing within a reasonable time after the incident and repeatedly notified Defendant thereafter. Despite these notifications and "despite having actual knowledge of the in-flight failure of [the] engine which it had overhauled and a claim made thereupon," Defendant "refused to honor the express warranty it provided on its work and parts supplied for [the] engine."

¶ 6 On 15 September 2020, Plaintiffs filed a second amended complaint against Defendant alleging a single cause of action for violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 *et seq.* ("UDTP"). Defendant filed a Rule 12(b)(6) motion to dismiss, arguing that South Carolina's statute of limitations applied to Plaintiffs' claim pursuant to North Carolina's borrowing statute, N.C. Gen. Stat. § 1-21, and that Plaintiffs' UDTP claim was time-barred under South Carolina's three-year statute of limitations. After a hearing on Defendant's motion to dismiss, the trial court granted the motion with prejudice by written order entered 22 December 2020. Plaintiffs timely appealed.

## II.    Discussion

Plaintiffs argue that the trial court erred by granting Defendant's Rule 12(b)(6) motion to dismiss.

### A. Standard of Review

"In considering a motion to dismiss under Rule 12(b)(6), the Court must decide whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51, 790 S.E.2d 657, 659 (2016) (quotation marks and citations omitted).  On appeal, we review de novo a trial court's grant of a motion to dismiss pursuant to Rule 12(b)(6).  *Id.*

### B. Analysis

The dispositive issue on appeal is whether the borrowing provision of N.C. Gen. Stat. § 1-21 requires application of South Carolina's three-year statute of limitations and thus bars Plaintiffs' UDTP claim.

"Our traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum." *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988). "Ordinary statutes of limitation are clearly procedural, affecting only the remedy directly and not the right to recover." *Id.* at 340, 368 S.E.2d at 857.

¶ 11 However, "[o]ur General Assembly provided a legislative exception to the traditional rule by enacting a statute containing a limited 'borrowing provision.'" *George v. Lowe's Cos.*, 272 N.C. App. 278, 280, 846 S.E.2d 787, 788 (2020) (quoting *Laurent v. USAir, Inc.*, 124 N.C. App. 208, 211, 476 S.E.2d 443, 445 (1996)). "Pursuant to N.C. Gen. Stat. § 1-21, where a claim arising in another jurisdiction is barred by the laws of that jurisdiction, and the claimant is not a resident of North Carolina, the claim will be barred in North Carolina as well:" *id.*,

> [W]here a cause of action arose outside of this State and is barred by the laws of the jurisdiction in which it arose, no action may be maintained in the courts of this State for the enforcement thereof, except where the cause of action originally accrued in favor of a resident of this State.

N.C. Gen. Stat. § 1-21 (2020). South Carolina Code § 39-5-150 provides that no action under the South Carolina Unfair Trade Practices Act may be brought more than three years after discovery of the unlawful conduct that is the subject of the suit. S.C. Code § 39-5-150 (2020).

¶ 12 In this case, it is undisputed that Plaintiffs were not residents of North Carolina at any relevant time; they were residents of South Carolina. It is also undisputed that Plaintiffs' lawsuit was filed on 15 June 2020, after the three-year statute of limitations for an unfair trade practices claim in South Carolina had run. *See id.* Accordingly, we must only determine whether Plaintiffs' UDTP "cause of action arose outside of this State," N.C. Gen. Stat. § 1-21, such that the borrowing

provision applied.

### 1. *Contract's Choice of Law Provision*

¶ 13 Plaintiffs argue that because the parties' agreed in the Warranty that North Carolina law would apply in the event of a dispute on the Warranty, North Carolina's four-year statute of limitations under N.C. Gen. Stat. § 75-16.2 applies to their UDTP claim; thus, the claim is not time barred. We disagree.

¶ 14 "[P]arties to a business contract may agree in the business contract that North Carolina law shall govern their rights and duties in whole or in part . . . ." N.C. Gen. Stat. § 1G-3 (2020). In this case, the operative portion of the Warranty states, "in the event of a dispute on this Warranty the laws of the State of North Carolina shall apply." By its plain terms, this provision dictates that North Carolina law governs a warranty dispute; this provision does not dictate that North Carolina law governs all litigation between the parties.

¶ 15 As neither an intentional breach of contract nor a breach of warranty, standing alone, is sufficient to maintain a UDTP claim, *Mitchell v. Linville*, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001), the Warranty's choice-of-law provision does not specifically apply to Plaintiff's UDTP claim. Conversely, the provision is not sufficiently broad to encompass Plaintiff's UDTP claim. *See Lambert v. Navy Fed. Credit Union*, 2019 U.S. Dist. LEXIS 138592, at \*17 (E.D. Va. Aug. 14, 2019) (holding that the choice of law language in the parties' contract was "sufficiently broad" to

preclude plaintiff's North Carolina UDTP claim). Accordingly, North Carolina law, and specifically its four-year statute of limitations, does not apply to Plaintiff's UDTP claim by virtue of the terms of the Warranty.

¶ 16 Nonetheless, even if the choice-of-law provision in the Warranty were construed to apply to Plaintiff's UDTP claim, North Carolina's four-year statute of limitations would not automatically apply. Applying "the laws of the State of North Carolina" to Plaintiff's UDTP claim would nonetheless necessitate a determination of whether the borrowing provision of N.C. Gen. Stat. § 1-21 requires the application of South Carolina's three-year statute of limitations to Plaintiffs' UDTP claim.

### 2. *Where the Cause of Action Arose*

¶ 17 Plaintiffs further argue that "the acts and events that form the basis for Plaintiffs' [UDTP] claim occurred in North Carolina" not South Carolina; because the cause of action did not arise outside of this State, the borrowing statute does not apply. We disagree.

¶ 18 In ascertaining whether Plaintiffs' UDTP action arose outside of this State, we are guided by our Court's choice-of-law analysis in the context of UDTP claims. Our North Carolina Supreme Court has not addressed the proper choice-of-law test for UDTP claims, and there is a split of authority in our Court on the appropriate rule to be applied. *Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 15, 598 S.E.2d 570, 580 (2004). Under the most significant relationship test, the court looks to "the law

of the state having the most significant relationship to the occurrence giving rise to the action." *Andrew Jackson Sales v. Bi-Lo Stores, Inc.*, 68 N.C. App. 222, 225, 314 S.E.2d 797, 799 (1984) (citations omitted). Under the lex loci approach, "[t]he law of the State where the last act occurred giving rise to [the] injury governs [the] Sec. 75-1.1 action." *United Va. Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 321, 339 S.E.2d 90, 94 (1986) (citation omitted); *see also Shaw v. Lee*, 258 N.C. 609, 610, 129 S.E.2d 288, 289 (1963) (explaining that "the law of the state where the injuries were sustained" governs the claim).

¶ 19      Plaintiffs argue that under both the most significant relationship test and the lex loci choice of law analysis, Plaintiffs have alleged facts sufficient to show that the claim arose in North Carolina and thus, that the borrowing statute does not apply.

¶ 20      Defendant, on the other hand, argues that "[n]o choice of law analysis need be done" because "[o]ur appellate courts have twice applied the borrowing statute to cases involving airplane accidents [and i]n both cases, the courts ruled that the claims arose in the state where the accident occurred." Defendant argues, in the alternative, that lex loci is the proper test to apply but that under either the most significant relationship test or lex loci, Plaintiff's claim arose in South Carolina.

¶ 21      We disagree with Defendant that no choice of law analysis need be done. As it was undisputed in both *Laurent v. USAir, Inc.* and *Broadfoot v. Everett*, 270 N.C. 429, 154 S.E.2d 522 (1967), cited by Defendant, that the causes of action arose outside of

this State, this Court did not analyze where the cause of action arose. We agree with Defendant's analysis, however, that under both the most significant relationship test and the lex loci choice of law analysis, Plaintiffs' claim arose in South Carolina.

¶ 22        Under the most significant relationship test, the individual plaintiffs reside in South Carolina, Plaintiffs shipped the engine to Defendant from South Carolina, the airplane accident occurred in South Carolina, Plaintiffs sustained their injuries in South Carolina, and Plaintiffs' alleged efforts to notify Defendant of the accident occurred in South Carolina. While North Carolina is not without connection to the occurrence giving rise to the action, South Carolina has the more significant relationship.

¶ 23        Under the lex loci approach, Plaintiffs sustained their injuries in South Carolina and the last act giving rise to Plaintiffs' claim occurred in South Carolina when Plaintiffs' airplane engine failed in South Carolina and they were forced to attempt an emergency landing in South Carolina. Thus, under the lex loci approach, Plaintiffs' claim "arose" in South Carolina.

¶ 24        As Plaintiffs' UDTP cause of action arose in South Carolina and Plaintiffs failed to file this action before South Carolina's three-year statute of limitation ran, this failure bars their claim not only in South Carolina, but also in North Carolina, pursuant to N.C. Gen. Stat. § 1-21. *See Stokes v. Wilson & Redding Law Firm*, 72 N.C. App. 107, 113, 323 S.E.2d 470, 475 (1984) ("[A]fter the cause of action has been

barred in the jurisdiction where it arose, only a plaintiff, who was a resident of this State at the time the cause of action originally accrued, has the right to maintain an action in the courts of this State." (citation omitted)).

### 3. *Substantial aggravating circumstances*

Even if we were to apply North Carolina procedural law, including its four-year statute of limitations, to this claim, Plaintiffs have failed to state a UDTP claim under North Carolina substantive law.

North Carolina's Unfair and Deceptive Trade Practices Act declares as unlawful "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a) (2020). "'[C]ommerce' includes all business activities[.]" *Id.* § 75-1.1(b) (2020). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts sufficient to show: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused injury to plaintiffs." *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) (citing N.C. Gen. Stat. § 75-1.1(a)). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007) (citation omitted). "A practice is deceptive if it has the capacity or tendency to deceive." *Id.* (brackets and citation omitted).

"Neither an intentional breach of contract nor a breach of warranty, however,

constitutes a violation of Chapter 75." *Mitchell*, 148 N.C. App. at 74, 557 S.E.2d at 623 (citations omitted).

> [A]ctions for unfair or deceptive trade practices are distinct from actions for breach of contract, and a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C. [Gen. Stat.] § 75-1.1. Substantial aggravating circumstances must attend the breach in order to recover under the Act. A violation of Chapter 75 is unlikely to occur during the course of contractual performance, as these types of claims are best resolved by simply determining whether the parties properly fulfilled their contractual duties.

*Id*. at 75, 557 S.E.2d at 623-24 (quotation marks, brackets, and citations omitted) (holding that plaintiff's allegations regarding defendants' deficient construction of a home and defendants' failure to properly address such deficiencies, "while certainly supportive of the conclusion that defendants breached the implied warranty of habitability, do not indicate 'substantial aggravating circumstances attending the breach' as to transform defendants' actions into a Chapter 75 violation").

¶ 28    In this case, Plaintiffs alleged in pertinent part:

> 5. . . . The engine failure and subsequent forced landing caused serious personal and psychological injuries to Plaintiffs HUGH TUTTLE and PAIGE TUTTLE and caused the total economic loss of aircraft N39686.
>
> . . . .
>
> 8.    Defendant TRIAD failed to properly overhaul, repair, test, inspect and certify Engine L-5575-61A in accordance with applicable policies, practices, laws and regulations, and in accordance with all warranties and

representations, and in violation of the contract between the parties, causing engine L-5575-61A to fail prematurely and without warning, causing the total loss of aircraft N39686. . . .

9.      Defendant TRIAD'S acts, and/or omissions, by and through its agents, employees, servants and/or officials, acting within the course and scope of their authority, included failing to comply with standards, practices and FAR's, which are intended to ensure that aircraft engines, including Engine L-5575-61A, and its component parts, are properly overhauled, assembled and tested . . . resulting in damages in excess of Twenty-Five Thousand Dollars ($25,000.00):

        . . . .

10. Defendant TRIAD, within a reasonable time after the occurrence and breach complained of, was notified of the failure of the product and its breaches and has been repeatedly so informed since that initial notification. Despite these notifications, TRIAD has refused to honor the express warranty it provided on its work and parts supplied for engine L-5575-61A.

. . . .

14. Defendant TRIAD's acts and practices as alleged in paragraphs 1 through 13 were deceptive and unfair to consumers in North Carolina, and therefore violate N.C. Gen. Stat. § 75-1.1 (a).

15. Defendant TRIAD's unfair and deceptive business practices include, but are not limited to:

> a. Misrepresentations regarding the airworthiness, fitness, and merchantability of the overhauled engine it manufactured, in which engine defects and faulty parts were hidden and unknowable, which endangered not only the pilot and other occupants of N39686 but also unsuspecting persons on the ground;
>
> b. Failing to honor the provisions of its warranties,

express and implied, over a lengthy time, despite having actual knowledge of the in-flight failure of engine L-5575-61A which it had overhauled and a claim made thereupon.

c. Unfair in that it offended established public policy as set forth in the Federal Aviation Regulations and general aviation good practices and the laws of North Carolina.

d. Other willful, wanton, reckless, intentional and unscrupulous and wrongful acts as set forth in this Complaint.

16. Plaintiffs IZZY AIR, HUGH TUTTLE and LESLIE PAIGE TUTTLE relied upon the representations made by Defendant TRIAD that Engine L-5575-61A was properly overhauled, airworthy, merchantable, and safe for its intended use, and upon the warranty issued by TRIAD.

17. As a direct and proximate result of the facts set forth in paragraphs 1 through 16 above, Plaintiffs IZZY AIR, HUGH TUTTLE and LESLIE PAIGE TUTTLE have sustained personal and psychological injuries, property and other economic damages in excess of twenty-five thousand dollars ($25,000.00), including, but not limited to, pre-impact fear and terror, bodily injuries, future medical costs, total loss of Aircraft N39686, loss of income, increased insurance costs, increased aircraft operational costs, and other damages as will be demonstrated at the trial of this matter.

¶ 29 Plaintiffs essentially allege that Defendant failed to perform the overhaul of the engine in a workmanlike manner and then failed to honor the provisions of its

Warranty.[1] The facts alleged, while arguably sufficient to state a claim for breach of the Warranty, do not indicate "substantial aggravating circumstances attending the breach as to transform [D]efendants' actions into a Chapter 75 violation." *Mitchell*, 148 N.C. App. at 76, 557 S.E.2d at 624 (quotation marks omitted); *see Walker*, 362 N.C. at 71-72, 653 S.E.2d at 399-400 (concluding that the jury's findings that "defendant failed to perform repairs completely and in a workmanlike and competent manner, and that defendant repeatedly failed to respond promptly to plaintiffs' complaints regarding those repairs" were alone insufficient "to reach conclusions of law required under § 75-1.1 as to whether defendant's actions were deceptive, immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers").

¶ 30        Lacking any allegations of "substantial aggravating circumstances," Plaintiffs have failed to state a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

¶ 31        Citing Rule 15 of our Rules of Civil Procedure, Plaintiffs argue further that they "should be allowed to amend their complaint to cure any defects or conduct

---

[1] Plaintiffs allege facts in their appellate brief in support of their UDTP claim that were not alleged in their Second Amended Complaint. We do not consider facts alleged beyond the four corners of the complaint and the attached Warranty. *See Jackson/Hill Aviation, Inc. v. Town of Ocean Isle Beach*, 251 N.C. App. 771, 775, 796 S.E.2d 120, 123 (2017) ("At the motion to dismiss stage, the trial court (and this Court) may not consider evidence outside the four corners of the complaint and the attached contract." (citation omitted)).

discovery to obtain information to support their complaint and overcome any [m]otion [t]o [d]ismiss." However, Plaintiffs have had ample opportunity to file a sufficient complaint and have failed to do so. Plaintiffs first suit named the wrong party. Plaintiffs then dismissed, re-filed, and amended the complaint twice. Moreover, there was no motion before the trial court to amend the second amended complaint. Accordingly, the trial court did not err by not allowing Plaintiffs to amend their complaint.

### 4. Equity

¶ 32 Finally, Plaintiffs argue that "equity requires that the court deny application of North Carolina's 'borrowing statute,'" arguing that Defendant induced Plaintiffs to delay filing their claim and thus, caused them to untimely file their action. We disagree.

¶ 33 Plaintiffs failed to plead facts sufficient to support a conclusion that Defendants are equitably estopped from asserting statute of limitations as a defense. *Compare Teague v. Randolph Surgical Assocs., P.A.*, 129 N.C. App. 766, 772, 501 S.E.2d 382, 387 (1998) (holding that defendant's "offer to discuss settlement or possible arbitration was not of such a nature as to reasonably lead plaintiffs to believe that defendants would not assert any defenses they might have, including the statute of limitations, in the event settlement was not accomplished")*, with Duke Univ. v. Stainback*, 320 N.C. 337, 341, 357 S.E.2d 690, 693 (1987) (holding that "[t]he actions

and statements of [defendant's] attorney caused [plaintiff] to reasonably believe that it would receive its payment for services rendered . . . and such belief reasonably caused [plaintiff] to forego pursuing its legal remedy against [defendant]").

¶ 34      Moreover, as explained above, even if we apply North Carolina's statute of limitations, Plaintiffs have failed to state a UDTP claim.  Accordingly, the trial court did not err by allowing Defendant's motion to dismiss.

## III.     Conclusion

¶ 35      The trial court did not err by dismissing Plaintiffs' action for failure to state a claim under Rule 12(b)(6).  Accordingly, we affirm the order of the trial court.

AFFIRMED.

Judges MURPHY and CARPENTER concur.